FILED
CLERK

12/7/2018 10:31 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

1        UNITED STATES DISTRICT COURT
2        EASTERN DISTRICT OF NEW YORK

3   ----------------------------------X
                                      :
4   LEE, et al.,                      :   17-CV-4037 (JFB)(AKT)
                                      :
5                 Plaintiffs,         :   100 Federal Plaza
                                      :   Central Islip, New York
6            v.                        :
                                      :   December 3, 2018
7   LEE, et al.,                      :
                                      :
8                 Defendants.         :
    ----------------------------------X

9
           TRANSCRIPT OF CIVIL CAUSE FOR ORAL RULINGS
10          BEFORE THE HONORABLE JOSEPH F. BIANCO
               UNITED STATES DISTRICT JUDGE
11
    APPEARANCES:
12

13  For the Plaintiffs:        ALEXANDER J. TREMBICKI, ESQ.
                               Lynch, Trembicki & Boynton
14                             225 Main Street
                               Westport, Connecticut 06880
15

16  For the Defendants:        FARZAD RAMIN, ESQ.
                               Kim & Bae, P.C.
17                             2160 N. Central Road
                               Fort Lee, New Jersey 07024
18

19

20
    Court Transcriber:         SHARI RIEMER, CET-805
21                             TypeWrite Word Processing Service
                               211 North Milton Road
22                             Saratoga Springs, New York 12866

23

24

25

    Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

2

1  (Proceedings began at 10:18 a.m.)

2          THE CLERK:  Calling Case 17-CV-4037, <u>Lee v. Lee</u>.

3  Counsel, please state your appearance for the record.

4          MR. TREMBICKI:  Sure.  Good morning.  It's Alexander

5  Trembicki on behalf of all of the plaintiffs in this matter.

6          THE COURT:  Good morning.

7          MR. RAMIN:  Good morning.  Farzad Ramin, Kim & Bae

8  P.C. on behalf of defendant Ji Yong Lee and the Gethsemane

9  Church of New York.

10          MR. PERKINS:  Good morning, Your Honor.  My name is

11  Paul Perkins.  I am from Kim & Bae with Mr. Ramin and I will

12  be forward working with Mr. Ramin to represent the defendants.

13          THE COURT:  Okay.  Good morning.  As you know I

14  scheduled this telephone conference to place my ruling on the

15  record with respect to the pending motion by the defendant in

16  this case to dismiss the amended complaint.  I decided given

17  how much time has gone by, and I apologize for the delay, to

18  give you a detailed oral ruling which should take about 15 or

19  20 minutes to place on the record and then I'll answer any

20  questions if there's any questions about the ruling.

21          For reasons I'm going to explain in a moment I'm

22  granting in part and denying in part the defendant's motion to

23  dismiss the amended complaint.  First, the Court concludes as

24  Judge Thompson did in his June 20, 2017 order transferring the

25  case that at least at this juncture plaintiff -- plaintiffs

3

1  have not met their burden of demonstrating that the Gethsemane
2  Church of New York has been properly served in the case.  So
3  the remainder of this motion pertains to defendant Ji Yong
4  Lee.  I will give the plaintiffs if they wish a chance to try
5  to cure by reserving the amended complaint or by -- if they
6  want to provide additional briefing but certainly based upon
7  the briefing as I'll explain in a moment I don't believe the
8  proper service has been demonstrated.
9          Also, as a threshold matter I just want to make
10 clear because this is sort of an overriding issue in the case
11 that I agree with defendant Lee that he's not bound by the
12 divorce court's standing order and that there is no private
13 right of action for violating that order.  However, with
14 respect to at least some of the claims as I'll go through here
15 there -- even though there's no separate and independent claim
16 under Connecticut law for violation of that order plaintiffs
17 have asserted separate causes of action under Connecticut law
18 such as unjust enrichment, conversion, statutory theft,
19 Connecticut Unfair Trade Practices Act, fraudulent transfer,
20 fraudulent conspiracy and tortious interference with expected
21 inheritance.  So even though there's no cause of action for
22 the standing order itself to the extent that the alleged
23 violation of that standing order can be utilized at least in
24 part to try to establish one or more of the elements of those
25 separate causes of action that those claims would be permitted

4

1   to proceed.  So I think that should hopefully provide some

2   guidance for the Court to view with respect to the standing

3   order itself.

4           As I'll also explain I conclude that plaintiff Lee

5   does have standing to bring this lawsuit both individually as

6   administratrix and as well as on behalf of her children.  I

7   don't think the causes of action that survived would be cause

8   of action that could be held by South Stamford Cleaners, Inc.

9   or Super Seven Cleaners, Inc.  So I think for the claims as

10  I'll go through in a minute that are going to proceed I think

11  Lee would be the only plaintiff who would have the ability to

12  bring those claims.

13          For reasons that I'll now detail I'm granting the

14  motion as to the CUTPA claim, the fraudulent transfer,

15  fraudulent conspiracy claims as well as in part the conversion

16  and statutory theft claims as it relates to the funds that

17  were transferred before the decedent's death but I'm denying

18  the motion to dismiss those two claims, conversion, statutory

19  theft with respect to the funds -- excuse me, with respect to

20  the money and property that were allegedly taken from the

21  residence after the decedent's death and I'm letting the

22  unjust enrichment and tortious interference with expected

23  inheritance claims proceed in their entirety include with

24  respect to -- including with respect to the funds transferred

25  before the decedent's death for reasons I'll explain in a

5

1    moment.

2         I think everybody understands that we're assuming

3    the operative complaint here is the amended complaint that was

4    filed on April 25th that there was supplemental briefing with

5    respect to that amended complaint.  There was no objection to

6    the filing of that amended complaint.  In any event, the Court

7    would have allowed it under the liberal standard of 15(a).

8         With respect to the standard for a motion to dismiss

9    under 12(b)(6) it's well settled.  I adopt the standard of

10   review that I set forth in Harbor Distributing Corporation v.

11   GTE Operations Support, Inc., 2016 W.L. 1228615 at Page 3

12   (E.D.N.Y. March 28, 2016).  In summary, I note that the Court

13   accepts the factual allegations in the complaint as true,

14   draws all reasonable inferences in the plaintiff's favor and

15   then determines whether a plausible claim exists under Iqbal,

16   Twombly standard as established by the Supreme Court.

17        The Court may also on a motion to dismiss consider

18   documents that were referred to or integral to the complaint

19   such as a contract.  See Chambers v. Time Warner, Inc., 282

20   F.3d 147 at 152, 53 (2nd Cir. 2002).  Within this framework

21   the Court in this particular case can certainly consider the

22   Connecticut and Superior Court's standing orders in the

23   plaintiff Lee and decedent's divorce proceeding.  However, to

24   the extent affidavits were submitted in support -- in

25   opposition to the motion the Court does not consider facts

1  that are contained in affidavits that are not contained in the

2  complaint for purposes of a motion to dismiss under 12(b)(6).

3          This is described briefly by way of background.

4  Obviously the parties are familiar with the facts as alleged

5  which I'm assuming to be true.  I'll just summarize them

6  briefly.  Plaintiff in this case, Ahn Suk Lee, administratrix

7  of the Estate of Miang [Ph.] Yung Lee, plaintiff's Lee's

8  former husband, the decedent, individually on behalf of her

9  son Daniel Lee as well as South Stamford Cleaners, Inc., Super

10 Seven Cleaners, Inc. and New Robinhood Cleaners, Inc., I'll

11 refer to as the corporate plaintiffs.  It's alleged that the

12 decedent was in total and complete control of the corporate

13 plaintiffs as president and sole shareholder at the time of

14 his death, Paragraphs 5 and 6, and for the remainder of this

15 oral ruling when I reference plaintiff I'm referring to the

16 individual plaintiff, Mrs. Lee.

17         Plaintiff alleges that she commenced divorce

18 proceedings against her former husband in Connecticut Superior

19 Court on June 9, 2016.  She alleges the Court issued standing

20 orders that provided that in all cases involving a marriage or

21 civil union neither party shall sell, transfer, exchange,

22 assign or move or any way dispose of without the consent of

23 the other party in writing or an order of judicial authority

24 and property except in the usual course of business or conceal

25 any property.  That's Paragraph 14 and the document itself --

7

1   the order itself is at ECF No. 19-1 at 7.

2          Plaintiff alleges that the standing orders were

3   served on her husband when the divorce was initiated,

4   Paragraph 15.  She alleges that defendant Yung Lee, the

5   decedent's brother, was aware of the pending divorce and

6   standing orders, Paragraph 7 and 12, and alleges that

7   defendant Lee was the pastor of the church defendant.  That's

8   Paragraph 8.

9          Plaintiff alleges that her former husband in

10  violation of the standing orders and in an effort to hide

11  assets from her in the divorce conspired, colluded and agreed

12  with defendant Lee personally on behalf of the church

13  defendant to transfer the funds to the defendants.  That's

14  Paragraphs 19 and 20 of the amended complaint.

15         Plaintiff alleges that her former husband received

16  no consideration for the funds he transferred to the

17  defendants, Paragraph 19.

18         According to the complaint the decedent committed

19  suicide on November 21, 2016, Paragraph 16, at which time the

20  divorce action was still pending.  Plaintiff alleges that the

21  Greenwich probate court appointed her as administratrix of her

22  deceased husband's estate.  She alleges that her son -- she,

23  her son and Esther Lee are the sole heirs and beneficiaries of

24  the deceased husband's estate.  According to the complaint

25  [inaudible] was administratrix for collecting all assets

8

1  belonging to the estate for proper administration.

2          In addition, you're conspiring to transfer funds to

3  hide the assets in the divorce.  Plaintiff alleges that when

4  her former husband died defendant Lee came to the scene of the

5  decedent's death and the decedent's apartment and converted to

6  his own use and for the benefit of the church defendant monies

7  and property belonging to the decedent and consequently to the

8  decedent's estate.  That's Paragraph 22.

9          As I noted before, plaintiff brings claims for

10  unjust enrichment, conversion, statutory theft, conspiring to

11  violate the standing orders and committing statutory theft in

12  violation of CUTPA, fraudulent transfer, fraudulent conspiracy

13  and tortious interference with expected inheritance.

14  Plaintiff seeks to recover damages, a constructive trust over

15  the assets held by the defendants and avoidance of the

16  transfers among other remedies.

17          Defendants move to dismiss this case among other

18  things for failure to state a claim and also argue that the

19  defendants were not bound by -- thus could not violate the

20  standing orders in the divorce, that there's no private right

21  of action for violating the standing orders and that

22  plaintiffs lack standing to bring this action.

23          First, with respect to applicable law, both parties

24  apply Connecticut law in their briefs.  I'm not going to

25  conduct a lengthy choice of law analysis because I don't think

9

there's a dispute that Connecticut law applies here.  For
purposes of a diversity case that was transferred from
Connecticut involving events that largely took place within
that state the Court will apply the substantive law of
Connecticut.  It's well settled under the Erie doctrine that
federal courts sitting in diversity apply state substantive
law and federal procedural law.  <u>Gasperini v. Center for
Humanities, Inc.,</u> 518 U.S. 415 at 427 (1996).

Additionally, when a case has been transferred
pursuant to Section 1404(a) a court will apply the law of the
transfer forum including the forum's choice of law rules.
<u>Sheldon v. PHH Corporation</u>, 135 F.3d 848 at 852 (2nd Cir.
1998).  So the Court is applying Connecticut law here.

First, with respect to the church defendant, Judge
Thompson ruled in his June 20, 2017 order that plaintiffs
failed to serve the church.  Plaintiffs attempt to reargue
that here but this Court continues to conclude that plaintiffs
have failed to demonstrate proper service on the church.
First, the defendants argued in their initial brief that the
church was not named or served because plaintiffs wrote the
name Trustees of Gethsemane Church in the City of the Sherrill
County of Oneida and State of New York on the summons and only
identifying Lee, et al. in the case captioned in the original
complaint.  Defendants indicated in their brief that the
correct name of the church was the Gethsemane Church of New

10

1   York with the caveat that they weren't conceding that the

2   church was actually a proper defendant in the case.  The

3   plaintiffs subsequently filed an amended complaint that

4   included various names in an attempt to identify the church

5   defendant among the name Gethsemane Church of New York.

6   That's Paragraph 8.

7           However, the plaintiffs have failed to provide

8   sufficient proof that the initial complaint or the amended

9   complaint was properly served on the plaintiff.  Plaintiffs

10  concede that the name of the church in the initial complaint

11  is incorrect.  The summons on the initial complaint was

12  incorrect.  They assert that the name was correct in the

13  amended complaint and that the church defendant is

14  unincorporated voluntary association and that service was

15  properly effectuated through the combination of personal

16  service, the Connecticut Secretary of State and mailed to the

17  secretary of the church.

18          Then next to establish the Court's jurisdiction over

19  the church in this case plaintiffs allege that Lee was the

20  church pastor and he was the agent of the church.  As the

21  defendants point out, the summons didn't indicate that Lee was

22  being served as an agent of the church.  The summons had the

23  incorrect name of the church and plaintiffs failed to submit

24  documentation that the amended complaint was correctly served

25  on the church as it should have been named.  So I don't

11

1   believe that service of the church has been demonstrated at

2   this point.  Plaintiff will either have to re-serve or if they

3   want to provide some additional documentation to the Court.

4   I'm not sure that they could but I'll give them an opportunity

5   to do that.

6          Moving now to the 12(b)(6) portion of the case.

7   Well, actually before we get to the 12(b)(6) I just want to

8   point out with respect to standing, defendants argue that

9   plaintiff's lack of standing to bring this claim because they

10  cannot allege harm resulting from a challenged transfers.

11  They argue that as an administratrix stands in the shoes of

12  the decedent, that the decedent has no cause of action.  His

13  representative cannot assert a right at his death.  They argue

14  that there is no cause of action.  It's decedent's estate.

15  Whether the decedent disposed of his property during his life

16  and given that he willfully gave money to the defendants they

17  argue that neither the decedent nor the plaintiff standing in

18  his shoes would have a viable claim.  They identify cases in

19  which the administratrix of the estate sought to bring a

20  wrongful death suit and the courts ruled that the

21  administratrix stood in the shoes of the deceased and could

22  recover only if the deceased could have recovered for his

23  injuries had they not proved fatal.  Keogh v. City of

24  Bridgeport, 187 Ct. 53 at 58 and 59 (1982).

25         Although I obviously understand that rule of law,

1   this is not a case where the administratrix brings the claims

2   based solely on the harm done to the deceased.  Rather, she's

3   bringing the claims also alleging that she suffered damages as

4   a result of unjust fraudulent or otherwise wrongful acts to

5   transfer and steal assets to which plaintiff alleges that she

6   was entitled to based in part on the standing order in part

7   and her expected inheritance.

8           Among other things, given that the plaintiffs do not

9   bring this action on behalf of the decedent alone and they

10  need not rely simply on his standing to pursue such claims and

11  therefore I'm denying the motion to dismiss for lack of

12  standing against plaintiff Lee.

13          However, as I will note as I through each of the

14  remaining claims for the claims that remain it does not appear

15  that the corporation's -- plaintiff's corporations would have

16  standing although it's alleged that money was transferred from

17  these cleaners because it's also alleged that the defendant Ji

18  Yong Lee was the president and sole stockholder of these

19  corporations.  I don't believe these claims could be brought

20  by the corporation because there would have been no

21  restrictions other than the standing order itself for him to

22  be able to transfer those assets.  So I don't think the

23  corporation would have a claim for the remaining -- would have

24  a cause of action for the remaining claims.

25          Moving to the standing orders in the divorce cases,

13

1   the defendants argue that under Connecticut law standing

2   orders in divorce cases pursuant to practice book 1998 Section

3   25-5 do not bind parties to the divorce.  They point to

4   several cases in which they argue Connecticut courts make such

5   a ruling including the <u>Chambers v. Stewart</u> case where the

6   Superior Court addressed whether the orders prescribed by PB

7   Section 25-5 are binding on third parties with constructive

8   notice of their content and that this was an issue of first

9   impression in Connecticut.  The Court found that the rule

10  clearly did not expressly effect third parties nor did it

11  implicitly create a private right of action.  The Court

12  concluded, and I'm now quoting from Page 4 "It is fair to

13  infer that the automatic order was denied for no other purpose

14  than to control the conduct of the parties during the pendency

15  of the action."  The Court then therefore found that the

16  automatic order in the divorce proceeding did not invalidate

17  the mortgages in that case that plaintiff's former spouse made

18  to third party defendant after the order had issued.

19        One of the other cases defendant cites for a similar

20  proposition is <u>Palicki v. Palicki</u>, 2002 W.L. 1458080 at Page

21  1, (Ct. Superior Court May 31, 2002) explained that where a

22  defendant was a party to the divorce proceeding that there's

23  no court order restraining a financial institution from

24  disbursing funds from accounts in defendant's name and that

25  the automatic orders did not bind the third parties.  In that

14

1    case the financial institutions.

2            As I noted when I started the ruling I agree with

3    the plaintiffs that the -- the defendants that plaintiff

4    cannot assert a separate cause of action simply based upon a

5    violation of the standing order that was not binding on a

6    third party such as defendant Lee.  However, there are

7    independent causes of action under Connecticut law that I

8    believe that at least plausibly -- I'm not suggesting that

9    it's going to be easy for the plaintiff to pursue these claims

10   under Connecticut law but I certainly think that they are at

11   least from a pleading standpoint plausible and that the

12   standing order could be used in part to establish one or more

13   elements of those claims.

14           Going to each of the claim -- I'm going to do it in

15   somewhat reverse order because I do believe that the tortious

16   interference with expected inheritance cause of action, the

17   seventh cause of action is I think the most applicable cause

18   of action to the allegations here.

19           Plaintiff brings a claim for tortious interference

20   with expected inheritance based on this alleged conspiracy the

21   defendants had with her former husband and transferred the

22   assets in violation of the standing orders.  She brings the

23   claim on behalf of herself and as guardian as I said of Daniel

24   and Esther Lee based upon an expectation of an inheritance in

25   those assets.  Connecticut courts have heard similar claims in

1  other cases involving transfers during or after divorce

2  proceedings brought as a claim for tortious interference with

3  an expected inheritance or sometimes as a tortious

4  interference with contractual relations or other similar

5  theory.  Although there's a split among courts, the judges of

6  the Superior Court and majority of the judges have recognized

7  a tort for intentional interference with an expected

8  inheritance.  Markowitz v. Via, 2017 W.L. 960769 at Page 7

9  (Ct. Superior Court, January 26, 2017).  The Markowitz court

10  set forth elements for this cause of action as noted in the --

11  what they characterize -- the court characterizes as the

12  majority of decisions finding that tortious interference with

13  an expected inheritance is a valid cause of action.  1) The

14  existence of an expected inheritance; 2) the defendant's

15  knowledge of the expectancy; 3) tortious conduct by the

16  defendant; and 4) actual damages to plaintiff resulting from

17  the defendant's conduct.

18          Elaborating on the standard for tortious conduct,

19  the Court cited the Connecticut Supreme Court statement that

20  this element may be satisfied by proof that the defendant was

21  guilty of some type of fraud or a misrepresentation or that

22  the defendant among other things or the defendant acted

23  maliciously.  Here, I believe plaintiff had adequately alleged

24  the elements of such a claim in the amended complaint.  It's

25  alleged in Paragraph 40 that Lee individually and his guardian

16

1  of Daniel and Esther Lee had an expectation of inheritance

2  from the estate of the decedent.  Paragraph 12 alleges that

3  Lee was aware of the pending divorce and standing order in the

4  divorce proceeding.  Paragraph 41 alleges they interfered with

5  that expectation of inheritance by working with his brother to

6  transfer the assets to the church that would properly be

7  assets of the estate distributable to plaintiffs and I believe

8  this is a plausible claim when all the allegations are

9  considered together.

10       Defendants argue that this language in Markowitz is

11  dicta.  As a threshold matter even though not binding this

12  Court finds that it is persuasive as well as the other cases

13  cited within Markowitz as to how the state's highest court

14  would rule on this issue.  More importantly the Second Circuit

15  interpreting Connecticut law has found this cause of action to

16  exist and certainly that Second Circuit decision is binding on

17  this Court.  That case is <u>Devlin v. United States</u>, 352 F.3d

18  525 (2nd Cir. 2003) where the Second Circuit said "The

19  question becomes whether a person's interest as a named

20  beneficiary or potential heir is a property interest that is

21  protected by the law of Connecticut.  We conclude that it is

22  because Connecticut follows the majority of jurisdictions both

23  in recognizing the tort of interference with an inheritance,"

24  and then the Second Circuit cites to Connecticut law.

25       Defendant also argues in a supplemental letter dated

17

September 12, 2017 that Markowitz is distinguishable because it involved a will whereas here the decedent died intestate without a will and thus there was no inheritance according to the defendants to interfere with or beneficiaries.  There was only intestate succession.  Neither Markowitz nor Devlin or any other case suggests that the expectation of inheritance must be created by a will as opposed to by intestate succession.  Plaintiff notes that Connecticut statutes gave Mrs. Lee a right to a statutory share of the intestate estate. That's Connecticut General Statute Sections 445A-436, 437 and 438.  So I don't see any basis to conclude that a statute in addition to a will -- I don't see a reason to conclude that a statute cannot create an expected inheritance such that that element could be met under this cause of action.

The Court notes that there are some other cases that I think are instructive on this issue of whether a marital relationship can be a beneficial relation in this context. There's -- again, I don't think these cases are necessary because I think the Devlin case is sufficient for purposes of establishing that this cause of action exists under Connecticut law.  There's a case called <u>Ferry v. Ferry</u> which I think actually defendants cite 2013 W.L. 5289955 (Ct. Superior Court, August 23, 2013) where plaintiff sued the trustee claiming she had an expectancy of an increased amount of the marital estate before assets were transferred out of the

18

1  trust.  The Court considered there whether to create a new

2  cause of action I guess building on existing Connecticut state

3  law for interfering with the financial expectancy of the

4  spouse and the dissolution of the marriage action.  It found

5  ultimately that the damages were unquantifiable and didn't

6  present the right facts for this new cause of action.

7          Again, I'm not establishing or relying on any type

8  of new cause of action.  I think the interference with the

9  expected inheritance could apply to this situation as is but

10 there was language in that case that discussed how the marital

11 relationship could satisfy the first requirement for that --

12 for the established tort, that there was a beneficial

13 relationship.  The language in that case was precisely because

14 of the fiduciary and close nature of the marital relationship

15 the injured spouse should have a remedy for interference with

16 an expectancy such as this.

17         The Court also notes that a case of <u>Torniaro v.</u>

18 <u>Allington Fire District</u>, 2008 W.L. 975072 at Pages 12 and 13

19 Connecticut Superior Court March 17, 2008 where the plaintiff

20 brought a claim for tortious interference in that case with

21 contractual/beneficial relations for the loss of funds she

22 believed she was entitled to receive through divorce

23 proceedings.  The Court had dissolved plaintiff's marriage

24 with her former husband, granted plaintiff an interest in a

25 pension that was to be executed through a qualified domestic

19

1  relations order that was going to be drawn up.  However, the

2  pension fund administrators issued the former husband a check

3  for the entire sum owed under his pension plan and then the

4  plaintiff brought suit against the pension fund administrators

5  alleging an improper disbursement of funds to the former

6  husband.  The Court laid out in that case what was a tortious

7  interference with business expectancies claim but -- and again

8  I'm noting that with respect to the first element the business

9  relationship the Court stated that plaintiff failed to

10  establish the existence of contract, that the Court continue -

11  - that the plaintiff and her former husband had been married

12  and were bound by the orders and the dissolution judgment and

13  that these facts make it rise to a beneficial relationship.

14  Then in that particular case on those facts although that

15  beneficial relationship element could have been satisfied they

16  found failure to establish tortious interference in that case.

17  The pension fund administrators had a legal obligation of

18  their own to transfer the money prior to the order being

19  filed.  I don't think we have that type of situation here.

20         Defendant Lee was allegedly aware of the order

21  prohibiting transfer -- prohibiting the transfer of money to

22  Gethsemane Church and then took the money based upon an

23  agreement he had with his brother but there's certainly no

24  allegation that he was in any way obligated to participate in

25  this transfer.  So I believe that this cause of action

20

1 survives a motion to dismiss.

2       Defendants -- with respect to the unjust enrichment

3 claim, defendants argue plaintiffs can't bring an unjust

4 enrichment claim because the transfers were not unjust and

5 there was no contract, a quasi contract as required to bring

6 such a claim.  Unjust enrichment is a broad doctrine which

7 applies wherever justice requires compensation to be given for

8 property or services rendered under a contract, and no remedy

9 is available by an action on the contract.  Cecio Brothers v.

10 Town of Greenwich, 156 Ct. 561 at 564 (1968).

11       Plaintiffs support their claim by offering a

12 different standard that in order to plead this cause of action

13 "plaintiffs must prove 1) that the defendants were benefitted;

14 2) that the defendants unjustly did not pay the plaintiffs for

15 their benefits and that the failure of the payment was to the

16 plaintiff's detriment."  Town of New Hartford v. Connecticut

17 Recovery Authority, 291 Ct. 433 at 451 (2009).  Plaintiffs

18 argue that they have alleged and they have alleged defendants

19 acted unjustly by conspiring to conceal, transfer and conceal

20 assets, defendants benefitted and that they did so at the

21 plaintiff's expense.

22       To the extent defendants argue that a contractual

23 relationship is necessary for an unjust enrichment claim under

24 Connecticut law the Court disagrees.  Connecticut courts have

25 said "a contractual relationship is not a prerequisite to

21

1   recovery based on unjust enrichment that's established by

2   'ample appellate decision precedent and legal authority in

3   Connecticut.'"   <u>Sherma v. Suzza</u>, 126 Ct. App. 759 at 767

4   (2011).  Plaintiffs thus were not required to allege a

5   contractual right to the decedent's funds.  They just need to

6   establish some sort of entitlement in order to recover.  As

7   the Sherma court explained, unjust enrichment is ground in

8   theory of restitution, that the restoration to the party of

9   something of which it was deprived because of the unjust

10  enrichment of another at his expense.

11          In support of their unjust enrichment claim

12  plaintiff here cites as I noted above the Town of New Hartford

13  and the Court believes that the plaintiffs in this case have

14  alleged entitlement to the funds through the combination of

15  the standing order, the divorce proceeding and the expected

16  inheritance and alleged there was unjust enrichment with

17  respect to those funds by the defendant with no consideration.

18          So although I think that this is somewhat completely

19  duplicative of the tortious interference with expected

20  inheritance claim, I am going to allow at this stage the

21  unjust enrichment claim to proceed as well although I will

22  address it at the summary judgment stage again.

23          The unjust enrichment claim also applies to

24  Paragraph 22 where it's alleged that defendant Lee after the

25  decedent's death came to the apartment and took money and

22

1  property belonging to the estate.  Again, this one may be

2  duplicative of the conversion claim which I'll discuss in a

3  moment but I will allow this to proceed also at least at this

4  juncture under an unjust enrichment theory in case it's not

5  completely duplicative.

6       Moving to the conversion claim, I believe that --

7  that's Paragraph 24.  Under Connecticut law conversion is

8  unauthorized assumption and exercise of the right of ownership

9  over goods belonging to another to the exclusion of the

10 owner's rights.  Discovery [inaudible] Ing v. Murphy, 33 Ct.

11 App. 303 at 309 (1993).  As defendants note, one of the

12 elements required to establish a claim for conversion is that

13 the defendant's conduct was unauthorized.  There are two sets

14 of allegations here.  The allegations regarding the funds the

15 decedent transferred to defendants and that prior to the

16 decedent's death and the allegation that defendant Lee came to

17 the decedent's apartment after his death and converted monies

18 and properties for defendant's use.  That's Paragraph 22.

19      Defendants argue in their brief that the decedent's

20 property was voluntary given that this authorization defeats

21 the conversion claim under strict elements.  I agree with

22 respect to the funds that the decedent transferred to

23 defendants prior to the death.  There was no ownership in

24 those funds at the time and thus under the strict elements of

25 conversion a conversion claim would not apply unlike a

23

1  tortious interference with expected inheritance claim which

2  does not require ownership at the time.

3      However, I think as defendant recognized at oral

4  argument this argument does not address the alleged allegation

5  that defendant Lee took property from the decedent's apartment

6  after his death.  Defendants do not dispute that the

7  defendants allege that this was an unauthorized assumption --

8  now he says alleged, and at that point would have an ownership

9  right to those assets based upon what would become part of the

10 decedent's estate and therefore I think a conversion claim can

11 proceed under that theory.

12     I similarly conclude again, although it does appear

13 to be duplicative, that a statutory theft claim can proceed

14 under the same theory under Connecticut General Statute 52-

15 564.  Statutory theft requires a plaintiff to prove the

16 additional element of intent over and above what he or she

17 demonstrates to prove conversion, the intent to deprive

18 another of property.  News American Marketing Instore, Inc. v.

19 Marquis, 86 Ct. App. 527 at 544 (2004) affirmed by the

20 Connecticut Supreme Court.

21     Given the similarity of the conversion and statutory

22 theft claims, defendants essentially make the same arguments

23 in moving to dismiss that there can be no theft when the owner

24 of the property gives it to another.  So my analysis with

25 respect to the conversion claim applies equally here and

24

1  certainly there is an alleged intent to deprive another of

2  property here.  So I'm granting the motion to dismiss on this

3  claim with respect to the funds the decedent transferred to

4  defendants during his lifetime but with respect to assets

5  defendant allegedly took from the decedent's apartment that

6  this claim survives.

7         Moving to the Connecticut Unfair Trade Practices Act

8  claim, the defendant -- plaintiff alleges defendant violated

9  in two ways by conspiring to violate the standing orders by

10 committing statutory theft.  First of all, the violations I

11 said of the standing orders itself cannot be a cause of action

12 but in any event under any theory the Court concludes that

13 having alleged the requirement with respect to trade or

14 commerce that would need to be existent for a violation to

15 exist under Connecticut law.  The Court recognizes that

16 Connecticut courts have established a broad range of claims

17 can be brought under CUTPA.  That's Thomas -- excuse me,

18 Baines River Recycling, Inc. v. Gallo, 50 Ct. App. 767, 785 at

19 786 (1998).

20        However, courts have expressed that there are limits

21 to claims that can be brought under the statute.  The

22 Connecticut Supreme Court itself has stated "it's strange

23 credulity to conclude that CUTPA is so [inaudible] any person

24 for any ascertainable harm caused by any person the conduct of

25 any trade or commerce."  Batco v. Microsoft Corporation, 260

25

1   Ct. 59 at 88 (2002).

2          Although there's not a Connecticut Supreme Court

3   case on the precise issue that I'm deciding here I conclude

4   based upon my review of Connecticut case law that exists that

5   the bounds of trade or commerce are more limited than

6   plaintiff suggests.  In Wonsbury v. Canvy, for example, the

7   Superior Court granted a motion to strike CUTPA claims that

8   were based on allegations that the student athlete defendants

9   solicited and accepted gifts or failed to keep his promises

10  for signing an exclusive agency contract with the plaintiff in

11  return.  That's 2004 W.L. 303687 at Pages 1 and 4 (Ct.

12  Superior Court January 27, 2004).

13         The Superior Court explained that the reader is

14  called upon to make a several leaps of fait to conclude that

15  defendants' alleged actions in accepting gifts while a student

16  was related to his being engaged in trade or commerce.  See

17  also Beiro v. Mates, 132 Ct. App. 272 at 289 (2011) finding

18  CUTPA inapplicable where plaintiffs had failed to allege the

19  defendants primarily engaged in the business in that case of

20  challenged real estate transaction as well as Sovereign Bank

21  v. Lacotta, 116 Ct. App. 483 at 494 (2009).  A CUTPA violation

22  may not be alleged for activities that are incidental to an

23  entity's primary trade or commerce.

24         Other Connecticut opinions require that the

25  plaintiffs and the defendants were engaged in a business or

26

commercial relationship.  For plaintiffs to bring such claims that include <u>KR v. Periera</u>, 2014 W.L. 1876806 at Page 4 (Ct. Superior Court April 10, 2014).

Here, the plaintiffs have not alleged that the decedent's transfers of funds to defendant Lee, his brother, related to Lee's primary trade -- any type of trade or commerce related to what is alleged to be a gift to a church and plaintiff has failed to allege any business relationship between the plaintiffs and the defendants.  So I don't believe that a CUTPA claim relating to the dispute over the transferred funds could exist based upon these facts under Connecticut law and obviously the claim based upon the funds stolen from the apartment and the property fails for the same reason.

Finally, with respect to the fraudulent transfer and fraudulent conspiracy claims, I'm dismissing those claims. They are brought under Connecticut General Statute 52-552 which was replaced by the Uniform Fraudulent Transfer Act. First of all, as defendants noted any fraud claims would have to satisfy Rule 9.  I've set out the standard for Rule 9 in many opinions including <u>Stare v. Counten</u>, 2009 W.L. 3259482 (E.D.N.Y. October 8, 2009).

Here, there certainly is not any type of specificity in terms of any fraud allegations.  It seems that to the extent it has been alleged "fraud" it would be -- specificity

27

1  would only be to the transfer order itself and I do believe

2  that this is completely duplicative of the tort claim that

3  already exists for the interference with the expected

4  inheritance that there is no alleged separate fraud beyond

5  that and therefore I'm dismissing these claims.

6         I guess plaintiff if she wanted to could try to re-

7  allege more specificity with respect to these but I'm very

8  skeptical that this -- that this could be corrected.

9         I also note that in the briefing plaintiff didn't

10  separately even brief these two claims.  So it almost appeared

11  as if they were even abandoned during the briefing both before

12  the Connecticut court and the supplemental briefing before me.

13         So that's the decision of the Court.  I just note

14  again with respect to the plaintiff corporations because the

15  corporations obviously didn't have any expected inheritance

16  and I don't believe the conversion, the unjust enrichment or

17  the conversion or the statutory theft claims could apply to

18  the corporations under 12(b)(6) any claims by the corporations

19  as it relates to those particular claims that survive I think

20  could not survive.

21         Are there any questions from plaintiff's counsel?

22         MR. TREMBICKI:  No, Your Honor.

23         THE COURT:  Do you want to think about what you want

24  to do with respect to -- or maybe you know the answer already.

25  With respect to the church.

28

1          MR. TREMBICKI:  Yes, I do.  I do want to think about

2    that.

3          THE COURT:  Okay.  So --

4          MR. TREMBICKI:  We're going to -- I expect -- I mean

5    I expect that we will re-serve to get them properly before the

6    Court but I think we have Mr. -- Reverend Lee before the Court

7    and have served him properly.

8          THE COURT:  Why don't we do this?  Why don't you

9    think about it and have a conversation with defendant's

10   counsel?  I'll hold off then putting an answer in until you

11   determine what you want to do and I would also suggest --

12   obviously I spent a lot of time on this.  There's no question

13   this is a very complicated case and a very complicated area of

14   the law under Connecticut law.  I think it's in both sides'

15   interest before spending a lot of money litigating this for

16   what could be a very long time that -- if both sides are being

17   reasonable given the amount of money that's at stake here I

18   would think that you might be able to work something out

19   rather than litigate this for a number of years.  So I would

20   suggest that you pass that suggestion along to your clients

21   because whatever money you're going to spend in this case, and

22   it will be significant, I would suggest if you try to resolve

23   it now that money could go to trying to resolve it rather than

24   to legal fees but I leave that in your wisdom.

25          So if you could send me a letter.  Is two weeks from

29

1   today long enough to figure out how you want to proceed?

2           MR. TREMBICKI:  Yes.

3           THE COURT:  Then --

4           MR. TREMBICKI:  Just, Your Honor, off topic, how do

5   we go about getting -- I'm assuming some of this being

6   transcribed.

7           THE COURT:  Yes.  This is a digital recording

8   device.  So you'll see on the docket sheet it will have

9   markers in terms of what -- you call the clerk's office and

10  ask to order a transcript of this ruling.  You'll have to give

11  them the numbers that are in the docket entry.

12          MR. TREMBICKI:  Okay.

13          THE COURT:  That's so they'll know where it is on

14  the system.  Okay?

15          MR. TREMBICKI:  Okay.

16          THE COURT:  Does defense counsel have any questions?

17          MR. RAMIN:  No questions.  I would just invite Mr.

18  Trembicki to call me before he spends tons of time trying to

19  re-serve people.

20          THE COURT:  Yes.

21          MR. RAMIN:  Maybe my style is a little bit different

22  than my predecessor.

23          THE COURT:  Yes.

24          MR. RAMIN:  Perhaps there's a lot of this we can

25  work out without wasting a lot of time.

1          THE COURT:  Yes.  So if you think having the

2    magistrate judge involved in trying to resolve the case, Judge

3    Tomlinson --

4          MR. RAMIN:  Would they be available -- I'm so sorry,

5    Your Honor, to interrupt.  Please go ahead.

6          THE COURT:  Go ahead.

7          MR. RAMIN:  Would they be available for like a

8    settlement conference?

9          THE COURT:  Yes.  If both sides request a settlement

10   conference you can request it with either me or Judge

11   Tomlinson and that would be arranged.  Okay?

12         MR. RAMIN:  Okay.  Thank you, Judge.

13         THE COURT:  Thank you.  Have a good day.

14   (Proceedings concluded at 10:59 a.m.)

15                      *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

31

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                                      _____

6                                      Shari Riemer, CET-805

7  Dated:  December 5, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25